IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEPHATERIA FREDERICKS | CIVIL ACTION |
| Plaintiff, | DOCKET NO.: 3:23-cv-435 (GTS/ML) |
| v. | |
| | **JURY TRIAL DEMANDED** |
| GHS FEDERAL CREDIT UNION<br>910 Front St.<br>Binghamton, NY 13905 | |
| Defendant. | |

## CIVIL ACTION COMPLAINT

Nephateria Fredericks (hereinafter referred to as "Plaintiff," unless indicated otherwise), by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. This action has been initiated by Plaintiff against GHS Federal Credit Union (hereinafter referred to as "Defendant") for violations of Title VII of the Civil Rights Act of 1964, ("Title VII" – 42 U.S.C. §§ 2000d *et. seq.*), the Pregnancy Discrimination Act ("PDA"), the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq.*) and the New York State Human Rights Law ("NYSHRL" - N.Y. Exec. Law §290 *et seq.*). Plaintiff asserts, *inter alia*, that she was discriminated against and retaliated against when she was unlawfully terminated and failed to be reinstated/rehired by Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

### JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for violations of civil rights under Title VII, the PDA and the ADA. This Court has

supplemental jurisdiction over Plaintiff's state-law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as her federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing her Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant was and is a federal credit union, organizing and existing under the laws of the United States, whose principal place of business is located in Binghamton, NY, where Plaintiff was formerly employed.

9. At all times relevant herein, Defendant acted by and through its agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff (female) was hired by Defendant on or about September 27, 2021 as a Member Service Representative (Bank Teller). Plaintiff was pregnant when she was hired.

12. During Plaintiff's pregnancy, she suffered from complications and other medical conditions that required her to take a medical leave of absence (as discussed *infra*).

13. Plaintiff was scheduled to return to work following the birth of her child, but unfortunately, Plaintiff had to undergo surgery related to one of the medical conditions/ complications that Plaintiff suffered from during her pregnancy and therefore required a longer leave of absence.

14. As a result of Plaintiff's pregnancy, she suffered from intrahepatic cholestasis of pregnancy, which resulted in her bile acids not flowing properly. Consequently, Plaintiff was required to undergo surgery to have her gallbladder removed.[1]

---

[1] While pregnancy itself is not considered a disability under the ADA, courts have held, in light of the 2008 amendments to the ADA that complications arising out of pregnancy can constitute a disability under the ADA, and whether they actually rise to the level of disability is a question of fact. *Cerrato v. Durham,* 941 F.Supp. 388 (S.D.N.Y.1996) (denying motion to dismiss ADA claim when the plaintiff suffered from spotting, leaking, cramping, dizziness, and nausea during pregnancy); *Hernandez v. City of Hartford,* 959 F.Supp. 125 (D.Conn.1997) (premature onset of labor that could only be controlled with medication constituted a disability); *Gabriel v. City of Chicago,* 9 F.Supp.2d 974 (N.D.Ill.1998) (back pain, stomach pain, swelling, and premature birth constituted "physical impairments"); *Mayorga v. Alorica, Inc.*, No. 12-21578-CIV, 2012 WL 3043021, at *5 (S.D. Fla. July 25, 2012) ("Thus, where a medical condition arises out of a pregnancy and causes an impairment separate from the symptoms associated with a healthy pregnancy, or significantly intensifies the symptoms associated with a healthy pregnancy, such medical condition may fall within the ADA's definition of a disability").

15. Plaintiff also suffers from depression, which became exacerbated by her medical conditions which arose from her pregnancy, as well as the way she was treated by Defendant (as discussed *infra*).

16. Plaintiff's aforesaid medical conditions, at times, limit her major bodily functions (including but not limited to her digestive functions), as well as her ability to perform some daily life activities, including but not limited to eating, focusing, engaging in social interactions and working.

17. Despite Plaintiff's disabilities (discussed *supra*), she was still able to perform the essential functions of her job with Defendant, however, Plaintiff did require reasonable medical accommodations at times, including but not limited to block medical leave.

18. As a result of her disabilities, Plaintiff ultimately required a medical leave of a total of approximately six (6) months. A medical leave is a well-established reasonable accommodation to hold an employee's job.

19. In or about early June of 2022, Plaintiff spoke with Amanda (last known unknown) in Defendant's Human Resources ("HR") department. Plaintiff presented HR with a note which stated that she would be out of work until June 21, 2022.

20. When Plaintiff presented this note to HR, she was met with hostility and was asked by Amanda: "What is the problem this time?" Plaintiff was questioned why she was being taken out of work.

21. Plaintiff clarified that she was already out of work, but that she had not been cleared yet and that her doctor wanted her to remain out of work until June 21, 2022.

22. Following Plaintiff's aforesaid conversation with Defendant's HR department, Plaintiff was informed via telephone by Amanda and Shawn Wolbert (President/Chief Executive Officer) on June 17, 2022, that she was terminated from her employment with Defendant.

23. Defendant's stated reason for Plaintiff's termination was that she was out of work for six months and that her absence caused a hardship and Defendant had to fill her position. Plaintiff was further informed that Defendant did not have a position for her.

24. After being informed of her termination, Plaintiff noticed on the job-posting website known as "Indeed.com," that there were positions available that she could perform, such as a customer service position.

25. Plaintiff was not offered this position at the time of her termination, so she applied to it.

26. Furthermore, following Plaintiff's termination, Defendant posted for the same position that Plaintiff had been performing prior to her termination. Plaintiff also applied for this position.

27. To date, Plaintiff has not been offered either position, despite being qualified for the same.

28. Plaintiff believes and therefore avers that Defendant violated Title VII/the PDA and the ADA, when it terminated her employment and/or failed to reinstate/rehire her.

**First Cause of Action**
**Violations of Title VII/PDA**
**([a] Wrongful Termination; and [b] Failure to Hire –**
**Pregnancy Discrimination)**

29. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

30. Based on the foregoing, Plaintiff believes and therefore avers that she was: (a) terminated from her employment with Defendant; and (b) not reinstated and/or not rehired, because of her pregnancy.

31. Defendant's actions of terminating and not hiring Plaintiff because of her pregnancy constitutes violations of Title VII/PDA.

### Second Cause of Action
### Violations of the Americans with Disabilities Act, as Amended ("ADAAA")
### ([a] Wrongful Termination; and [b] Failure to Hire –
### [1] Actual/Perceived/Record of Disability Discrimination;
### [2] Retaliation; and [3] Failure to Accommodate)

32. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

33. Plaintiff suffered from qualifying health conditions under the ADAA, which (at times) affected her ability to perform some daily life activities – discussed *supra*.

34. Plaintiff requested reasonable accommodations from Defendant, including but not limited to block medical leave.

35. On or about June 17, 2022, Plaintiff was informed that she was terminated from her employment with Defendant.

36. It is believed and therefore averred that Plaintiff was ultimately terminated from Defendant, and was not reinstated and/or not rehired, because of: (1) her known and/or perceived disabilities; (2) her record of impairment; and/or (3) because she requested accommodations.

37. Plaintiff also believes and therefore avers that Defendant refused to accommodate her disabilities.

38. These actions as aforesaid constitute violations of the ADAAA.

## Third Cause of Action
## New York State Human Rights Law ("NYSHRL")

39.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

40.     Plaintiff re-asserts and re-alleges each and every allegation as set forth in the First and Second Causes of Action, *supra,* as such actions constitute identical violations of the NYSHRL.

41.     These actions as aforesaid constitute violations of the NYSHRL.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.      Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B.      Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendant until the date of verdict;

C.      Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

              Respectfully submitted,

              **KARPF, KARPF & CERUTTI, P.C.**

              */s/ Adam C. Lease*
              Adam C. Lease, Esquire
              3331 Street Road
              Two Greenwood Square, Suite 128
              Bensalem, PA 19020
              (215) 639-0801
              *Attorney for Plaintiff*

Dated: April 7, 2023